MINNIE MOTTINGER, MOTHER AND GUARDIAN OF HARRY MOTTINGER, v. ROBERT HALFMAN AND OTHERS.
ROYAL KREUGER, APPELLANT.

76 N. W. (2d) 689.

April 13, 1956—No. 36,699.

116

P. M. Meehl & Glenn Catlin, for appellant.

Freeman, Peterson, Hoppe & Gaughan and Ross Brown, for respondents Halfman.

William R. Mitchell, for respondent Mottinger.

THOMAS GALLAGHER, JUSTICE.

Action for damages for personal injuries sustained by plaintiff's ward, Harry Mottinger, when struck by a car driven by defendant Robert Halfman, while walking northerly on the west side of County Highway No. 11 in the city of Tracy. At the time, the Halfman car likewise was proceeding northerly on such highway. The accident

occurred while Halfman was passing to the left of a pickup truck driven by defendant Royal Kreuger who had turned left from Highway No. 24 into Highway No. 11 directly in front of the Halfman car.

The jury returned a verdict of $20,000 in favor of plaintiff against both Halfman and Kreuger. This is an appeal by Kreuger from an order denying his motion for judgment notwithstanding the verdict or for a new trial. On appeal it is his contention that (1) there is no evidence of any negligence on his part proximately causing or contributing to the accident; (2) the court erred (a) in its instructions to the jury with reference to proximate cause; (b) in its instructions to the jury with reference to the emergency doctrine; and (c) in refusing to instruct the jury as to the maximum speed authorized within the corporate limits of Tracy; and (3) the court erred in denying his motion to dismiss the action at the close of plaintiff's case when the only evidence relating to negligence was that elicited by plaintiff upon cross-examination of defendant Halfman under Rule 43.02 of Rules of Civil Procedure.

Viewed in the light most favorable to plaintiff, the evidence is as follows: The accident happened January 11, 1952, at about 9 a. m. The day was clear but the highways were icy and slippery. Highway No. 24 is surfaced with gravel and runs in an easterly and westerly direction, intersecting Highway No. 11, which is of tarvia. It forms the southerly line of the city of Tracy. There is a highway department "stop sign" thereon, requiring vehicles to stop and yield the right-of-way to vehicles traveling upon Highway No. 11.

Halfman testified that he was traveling northerly toward Tracy on Highway No. 11 at a speed of about 50 miles per hour; that as he approached Highway No. 24 he first observed Kreuger's pickup truck traveling about 20 to 25 miles per hour on Highway No. 24, approaching the intersection from the west; that he then slowed down by removing his foot from the footfeed; that at that time he believed the Kreuger truck would stop before entering the intersection as required by the "stop sign" but that it continued traveling into Highway No. 11 without stopping, making a round or inside turn at the intersection in such a way as to place it immediately

in front of his car; that the Kreuger truck was then traveling at a speed of from 10 to 15 miles per hour; that to avoid colliding with it he applied his brakes and turned into the left lane of the highway; that while doing this his car commenced to skid and that he then lost control of it; that he first saw Mottinger walking north on the highway after he had turned out to pass the Kreuger truck; that he tried to turn back to avoid striking him but was unable to do so because the truck was then parallel with him; and that his car continued to skid and swerved into Mottinger about 100 feet north of the intersection, throwing him into the ditch.

■ After careful examination of the record, we cannot escape the conclusion that there is sufficient evidence to present a jury issue as to whether Kreuger was negligent and whether his negligence proximately contributed to the accident. It is clear therefrom that the jury may have concluded that Kreuger entered into an arterial highway, the surface of which was icy and slippery, directly in front of an oncoming car without stopping therefor or without yielding the right-of-way thereto as required by M. S. A. 169.20, subd. 3; and without first ascertaining whether such movement could be made with safety, Bohnen v. Gorr, 234 Minn. 71, 47 N. W. (2d) 459; Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320; Waldo v. St. Paul City Ry. Co. 244 Minn. 416, 70 N. W. (2d) 289; that in consequence his truck was placed immediately in front of the Halfman car so that Halfman was compelled to turn sharply to his left to avoid striking it; and that because of this action on the part of Kreuger, and because of the speed at which Halfman was traveling, the latter's car skidded and swerved on the icy highway, striking Mottinger a short distance north of the intersection. From the facts as thus outlined, it would follow that the jury was justified in finding negligence proximately causing or contributing to the accident on the part of both Kreuger and Halfman. We have repeatedly held that such acts or omissions constitute negligence. Bocchi v. Karnstedt, 238 Minn. 257, 56 N. W. (2d) 628; Olson v. Anderson, 224 Minn. 216, 28 N. W. (2d) 66; Bohnen v. Gorr, *supra;* see, Svenson v.

Vondrak, 200 Wis. 312, 227 N. W. 240; Bokelkamp v. Olson, 254 Wis. 240, 36 N. W. (2d) 93.

■ That Kreuger's negligence was a proximate cause of the accident likewise seems clear. Had he not turned into the highway immediately in front of the Halfman car, Halfman would not have been forced to turn to his left in an attempt to avoid colliding with the truck but could have proceeded northerly without danger. He had the right to assume that Kreuger would comply with highway regulations, Cooper v. Hoeglund, 221 Minn. 446, 22 N. W. (2d) 450; Holmberg v. Villaume, 158 Minn. 442, 197 N. W. 849, and the latter's failure to observe them was directly responsible for placing him in a position of peril with the resulting consequences to Mottinger. Bocchi v. Karnstedt, *supra;* Olson v. Anderson, *supra.*

■ Defendant Kreuger contends that his failure to stop at the intersection in compliance with the provision of § 169.20, subd. 3, could not in itself constitute negligence proximately causing the accident since Mottinger as a pedestrian was not one of those for whose protection the statute was enacted; and that hence the court erred in instructing the jury with reference thereto. We do not agree with this contention. The question as to the person for whose benefit a statutory duty is imposed is dependent upon the purview of the legislature generally to be gathered from the language of the enactment under consideration. Alsaker v. DeGraff Lbr. Co. 234 Minn. 280, 48 N. W. (2d) 431; Rosse v. St. Paul & D. Ry. Co. 68 Minn. 216, 71 N. W. 20, 37 L. R. A. 591. Here, § 169.20, subd. 3, is a part of c. 169 designated as the Highway Traffic Regulation Act. Therein, "traffic" is defined to include "pedestrians, * * * vehicles, * * * and other conveyances, * * * while using any highway for purposes of travel." § 169.01, subd. 44. In construing § 169.20, subd. 3, we have held its main object was to insure that the right-of-way at intersections be yielded to drivers traveling the through highways of the state. Bohnen v. Goor, *supra.* Certainly this must be to avoid situations such as that presented here in which any traffic—pedestrian or vehicular using the through highway at or near an intersection—might be endangered if the rule were not ob-

served. It would follow that pedestrians near the intersection and using the through highway, such as was Mottinger here, are well within the class intended to be protected by the enactment.

■ It is Kreuger's further contention that at the trial when plaintiff rested no evidence had been presented showing negligence on his part and therefore that under Rule 43.02 the court should have granted his motion to dismiss made at that time. In this connection he asserts that he was not bound by the testimony of his codefendant Halfman brought out under cross-examination under the statute. It appears, however, that at the time plaintiff rested, separate and apart from Halfman's testimony, there was ample evidence to support a finding of Kreuger's negligence. He testified under cross-examination by plaintiff that when he first saw the Halfman car it was but 500 to 600 feet to the right on the arterial highway and approaching the intersection; that it was then in full view and that there were no obstructions which would later have blocked his view thereof as it approached the intersection; that there was frost on the highway and that it was in an icy condition; that his four children were seated in the cab to his right; that notwithstanding the situation he made but a momentary stop, shifted into intermediate, and proceeded into the right lane of the through highway immediately in front of the Halfman car; that in his rear view mirror he *then* saw that the Halfman car was coming "faster than I anticipated"; and that as it attempted to pass him it was going 50 miles per hour.

Likewise, before plaintiff rested, Fred Mottinger, brother of the injured man, had testified that following the accident Kreuger had stated to him that, after he (Kreuger) had stopped for the intersection, he had "started out into the highway and he saw this other car coming but he guesses he underestimated his speed and he got out into the middle of the road and he saw he wasn't going to get by and the accident happened."

The evidence thus outlined would be amply sufficient to support a finding that, even if Kreuger had stopped momentarily at the intersection, he still had failed to yield the right-of-way to the vehicle

on the arterial highway and that, without observing its speed or ascertaining if his own movement could be made with safety, he had proceeded directly in front of it in such a way as to create a situation of peril to other traffic at or near the intersection. It is clear therefrom that the trial court was correct in denying Kreuger's motion to dismiss when plaintiff had rested and was likewise correct in instructing the jury with reference to § 169.20, subd. 3.

■ With reference to the instructions complained of, we find no material error prejudicial to the defendant therein. As indicated above, on the evidence submitted, § 169.20, subd. 3, became applicable, particularly in view of Halfman's testimony that Kreuger had entirely failed to stop at the intersection. With reference to Halfman's speed within the corporate limits of Tracy, the trial court clearly set forth the 30-mile limitation therein. Jelos v. Oliver I. Min. Co. 121 Minn. 473, 141 N. W. 843. The emergency doctrine based upon Halfman's testimony that Kreuger had suddenly driven in front of him was properly given with the cautionary addition that the emergency would be of no benefit to Halfman unless he was free from negligence. Cf. Sathrum v. Lee, 180 Minn. 163, 230 N. W. 580.

With respect to proximate cause the trial court instructed the jury as follows:

"Now, I will define for you what we mean by proximate cause. Was there a proximate causal connection between the negligence, if you should so find, and the injuries? In defining the question of proximate cause it simply means this: It is that cause which causes the injury directly and immediately, or through a natural sequence of events without the intervention of another independent cause.

"* * * If you find that any one of these rules which I have read to you were violated, and if you find that the violation was negligence, you must still proceed to determine whether that violation proximately contributed to cause the injury. If there is no causal connection, that is, no proximate causal connection between the violation of the traffic rule and the injury, then, of course, there is a missing link as far as liability is concerned.

"So in considering all of these traffic rules, the question of negligence, you must also consider, if you find any violations, was that violation a proximate cause of the injury, or did it proximately contribute to cause the injury in question."

No exception was taken to this instruction nor was there any request for any other definition of proximate cause. This definition might have been given in more detail, but since there is no fundamental error therein, in the absence of objections or exceptions, it became the law of the case. Janicke v. Hilltop Farm Feed Co. 235 Minn. 135, 50 N. W. (2d) 84; Froden v. Ranzenberger, 230 Minn. 366, 41 N. W. (2d) 807; Mickelson v. Kernkamp, 230 Minn. 448, 42 N. W. (2d) 18.

The order appealed from is affirmed.

Affirmed.